We'll turn to the next case on our calendar, International Leisure Products versus Sunny Life Australia et al. Good morning, your honors, Brian Walmsley for Appellant International Leisure Products, Inc. This is an appeal from a 12B6 dismissal of a complaint on the trade dress and the design of a product. And it- How this case differs from the Fun Boy case? Well, there's a lot of differences, your honor. Good, because that would be helpful for me. Okay. And I believe Judge Stroni sat on the Fun Boy case, so I may- It's the same lake, different swan. Is that right? Yes, yes. But a different case altogether. It's factually very, very different. If we look at the summary order of this court, we see that in footnote one, for example, the court is confused as to what are the- Is this a product line case? Where did the accused products? And it seemed to factor into its decision. This is a very different case because the pleadings are different and they're very focused and specific and are focused on a specific product. And as a matter of fact, the Southern District, and that's another factual distinction here, is that we have this expert judicial opinion from Judge Roman in the Southern District. They found that this complaint passed the motion to dismiss almost all of the issues required for pleading a trade dress infringement case, except for the fact of aesthetic functionality. Even under the Inwood test, which is a test for utilitarian functionality, but the court also found that we have pleaded specifically the meets and bounds and the dimensions of our trade dress, and that we're focused on a specific product. Another important point, difference between this case and Fumboy, is this is a copying case. Fumboy was not. When you take the specific, we are alleging, and we are saying in our briefs, that we are focusing on the specific trade dress elements, and those elements are specifically copied. And the case law says copying is an indication of distinctiveness. It's also an indication of secondary meaning. So, there's a lot of factual issues. All right, thank you. Okay, back to my presentation. So basically, even though the trade dress law and the cases that we're all looking at talk about the issues of trade dress protection and that it should not be exclusive and preclusive of competition. There's very little guidance as to, in the pleading stage in a complaint, just how do you plead that? It's an issue of fact. How do you say that we are not precluding competition? We say that in paragraph 18 of our complaint, that these trade dress elements, although very precise, are not necessary for the evocation of a swan in this case. So therefore, opening the competition to have another type or a different rendition of that part. And so we're saying that this language would be acceptable or to allege aesthetic non-functionality. Now the only case that we found as a pure 12B6 motion to dismiss case, which we don't talk about ad nauseum, I guess, in our briefs, is the visual impacts versus Athlon case, another southern district case. Which in which trade dress infringement was alleged and this complaint was found to be sufficient. And in that case also, like ours, all of the trade dress elements were defined in terms of aesthetics. The court found that it sufficiently pleaded non-functionality. By the language that the trade dress elements being aesthetic were not necessarily for the function, quality, or whatever of the product. Now, we've completed that, we've pleaded that also. In fact, our pleadings are exceedingly similar, and all of the comparison is pointed out with this case. There are two differences in the cases, though. The one difference is we have, including the language of paragraph 18 of our case, that the specific elements are not necessary to evoke the swan. And therefore, we argue on page 11 of the reply brief that this opens up competition. For alternative designs, and alternative designs, as part of the factual rendition of, is there actual preclusion of competition in the market? The existence of alternative designs argues against that. The other point is- Alternative designs of swans or just pool toys? Well, okay, very good point. This is a pool toy, and the elements can be used to define a swan and look like a swan. However, it is not an anatomically correct swan. If we were claiming trade dress in an anatomically correct swan, then I would agree that, okay, we really can't do that. There are a lot of ways that pool toys, flotation devices can resemble a swan, but have different specific trade dress elements than the ones that we are asserting. The other difference, or the main difference between the visual impacts case and our case, is that they have included a statement in their complaint that we have also moved to allow to mend our complaint to add. And basically, that statement is, what we would promote is ILPs, exclusive use of ILPs trade dress will not put competitors at a significant non-reputation related disadvantage. Now, that was in paragraph 37 of the complaint in visual impacts. That did not form part of the judge's decision in that case. These are all in our appendix. The judge, in view of the aesthetic description of the trade dress, without even referring to this, said, okay, this meets non-functionality. So, what we're saying is we can do that here. We can say we have, our language goes beyond what was provided in that opinion. But in the alternative, we ask the court, and we specifically move the court on page 35 of our brief, for permission to amend the complaint and add the only language that we have found that provides sufficient allegation, a factual allegation, that this is aesthetically non-functional. Now, I'd like to just for a moment then talk about the cases that support making this motion now. And we cite to the city of Pontiac, policeman and fireman's case, which is a case very, very similar to the extent that a complaint was dismissed with prejudice, but without explanation as to the prejudice. On footnote 70 of that case, the court cited the Panther Partners case, saying that when you dismiss with prejudice without reason, that the review is a de novo review. Now, there does not appear to have been a motion in the lower court for leave to amend. So it's not a case where we're deciding that by abuse of discretion, whether that leave was denied or granted. But in the city of Pontiac case, we note that the court entertained and considered whether to grant leave to amend that complaint. But it declined, and it declined for the reason that the appellant did not offer any new legal theories or cases or facts to support making an amendment, which I guess would make it futile. But we are not like that. We are offering legal support and specific facts and specific pleading that that's how we would amend the case. Thanks very much. You've reserved some time. Thank you. And gotten some extra time as well. Thank you. Mr. Rothstein. May it please the court, Chester Rothstein for the defendants, Sunny Life and Bloomingdale's, their customer. Collateral estoppel. This, your honor, this case is exactly the same. The trade dress is exactly the same. When- Mr. Walmsley, give us all the differences between the two cases. Was he not correct? Yes, he was not correct, your honor. This is a trade dress case based on trade dress. And the trade dress elements that they articulated in their complaint in Fun Boy, and the second amended complaint in Fun Boy, and the trade dress elements that they articulated in the second amended complaint in Sunny Life, are word for word, comma for comma, identical. That's in paragraph 17 in Sunny Life, and paragraph 16 in Fun Boy, and then- The district court didn't decide it on over breath, did it? The Fun Boy- In this case. In this case, no. It was mostly on- Aesthetic functionality. Aesthetic functionality, but they are related, your honor. And there certainly were findings in both the district court and the Fun Boy court which are completely relevant to the- But should we decide it on the basis of over breath rather than aesthetic functionality? No, sir. Aesthetic functionality is a very good reason to dismiss this case, as well as collateral estoppel. Because in our case, a predicate basis for each and every element is a valid trade dress. The Fun Boy court has already held, which was asked to be reviewed and rejected, that there is no trade dress. It was on a different reason. On the basis of over breath. On the basis of over breath. But if there is no trade dress, then each and every one of the claims in our case must fall as well. Because if there's no trade dress, then there is no trade dress infringement, no unfair competition. And the other different various claims that they say are all based on having a trade dress. If there's no trade dress, there's no trade dress, and we should all go home. As to the difference being that copying. First of all, there is no evidence in this case that there was copying. We actually don't know from the evidence of this case where each of the parties got their different swans. They may have all bought them from the same factory in China because we never got to that point and we don't need to. But I will point out a very important case, a similar case from the Eastern District of New York, Bubble Genius. Which I'll talk about if we get to the aesthetic functionality issue in a minute. But that case said, indeed, the probative value of evidence of intentional copying is particularly limited in cases involving product design. Since the copier may very well be exploiting a particularly desirable feature, rather than seeking to confuse consumers as to the source of the product. I'm sorry, that was in Kaufman and Fisher Wish Company about a wishing doll. I apologize, that's not the Bubble Genius case. May I go to aesthetic functionality? And. Looks a lot more like the plaintiff's swan. I'm sorry, sir? This one does look like the plaintiff's swan a lot more. They're very similar. Than the other case, right? They're very, very similar. You would agree with that, right? Sorry? You would agree with me on that? Yes. They're very similar. Yes. Does that make a difference? No, absolutely not. Because with a trade dress, because once you've identified a relevant market for a trade dress, pool swans, that would put competitors at a significant competitive disadvantage. You can't carve out a very sliver, thin, exact copy within it which the trade dress covers. And that's because trademark is not meant for that. Trademark, the infringement of trademark is a likelihood of confusion. Likelihood of confusion under the Polaroid factors is quite broad, right? It looks at all of these factors to see whether there's a likelihood of confusion between them. And let's face it, all of these swans look, pool swans by various companies, look pretty much alike. I think there probably is a good argument that they're all likely to be confused with each other. And so if one person has the trade dress, they're all going to be likely to be confused. The reason the Second Circuit is so wary about extending trade dress to product design is because there is an excellent way to handle these things. For example, patent law. In patent law, you have the claims which are precise, and then you have to look at the accused device, and does the accused device have each and every element of those claims by literal infringement or a doctrine of equivalence? You don't have that at all in trademark law. I don't know how the courts around the nation would be able to say, okay, there's a trade dress that competitors need, because it's aesthetically functional, to be able to make a swan into a pool float. But this exact one isn't covered by, it is a trade dress. It really can't work. And that's why in the Uriman court, we, the Second Circuit, exercise particular caution when extending trade dress protection to product designs. And also, that's court, unlike patent and copyright, which bestows limited periods of protection, trademark protection is open-ended. It is essentially forever. On the issue of aesthetic functionality, remember, aesthetic functionality is whether the look of something would put competitors at a significant non-reputation-based disadvantage. We have a very close case, the Fun Boy case, although it was talking about a different issue, it was talking about the over breadth of the description, it answered our question. It said, quote, in our view, a swan-shaped pool float represents the type of design choice that is almost invariably intended to render the product itself more useful or more appealing, rather than to identify the product's source. The Supreme Court also had a very similar statement in Walmart against Samara, where they said, even the most unusual of product designs, such as a cocktail shaker shaped like a penguin, is intended not to identify the source, but to render the product itself more useful or more appealing. If the product is useful, if it's an inflatable swan, which is in the public domain and everybody has the right to do it, then the competitors will be at a disadvantage if they can't make that, at least under trade dress law. Patent laws we can look at, copyright law we can look at, but those have very special protections to make sure that it doesn't go overly broad. There's another case from the Eastern District, I mentioned it before, Bubble Genius, which really I think is our case as well. That the plaintiff tried to allege trade dress rights in novelty soaps made out of the periodic chart of the elements. Something which exists, and they thought it would be fun to have phosphorus pH, a little soap shaped like that square. And the court said, and it's really something that is exactly this case, competitors in this market would be placed at a significant non-reputation related disadvantage if plaintiff had exclusive rights to produce and sell available periodic tables. If you look at the breadth of the trade dress claim in this case, if ILP's competitors were precluded from selling any swan pool float with a base, a neck, a face, which they say possibly resembles a swan, wings, a tail, and swan colors, they would be at a competitive disadvantage because of the product they want to make, not because of the party that originally put it out. The Fun Boy Court also helped answer this question about the breadth. They said that ILP trade dress would encompass any bird shaped pool float with even a passing resemblance to ILP's giant swan. That bolsters Judge Ramon's holdings that plaintiff simply described the basic elements of a swan that floats on water readily available in the public domain, and he also said that they'd be capable of successfully challenging just about any iteration of an inflatable swan. Really, these things all have to look alike, and in fact, we know that. They sued three different parties with three different inflatable swans, the Fun Boy Swan, the Sunny Life Swan, which was sold in Bloomingdale's, and also one by a company called Floaty Kings, which that case was settled. That one did not win on motion to dismiss. As to the issue that Mr. Wambly brings up about visual impact, he seems to be getting it wrong. He thinks that he can cure this by throwing in a conclusion that it doesn't significantly impair non-reputation based, doesn't provide a non-reputation advantage. He needed to do much more than that in this case. He needed to actually put facts which would explain why my client wouldn't be at a disadvantage, and he didn't do that, but he can't do that. And the last point I'd like to make in my 37 seconds is, there is nothing wrong with, if they have no trade dress, there is absolutely nothing wrong with copying. The Supreme Court in traffics said trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products, copying is not always discouraged or disfavored by the laws which preserve our competitive economy. Professor McCarthy, a leader in the field of trademark law, put it a little bit more succinctly. It must also be forgotten that there is absolutely nothing legally or morally reprehensible about exact copying of things in the public domain. Thanks very much. Thank you, your honors. Wamsley, you've reserved some time. Thank you. Okay, number of points. First of all, we have not seen any case on aesthetic functionality where they found market preclusion without factual discovery. In fact, in the case of Courtney Communications, the fact that you can't determine that issue of market exclusion on the pleadings. It's a factual issue. The question before the court is, how do you plead that? Number two, copying. You would be hard pressed to find any differences between these two swans, the alleged swan and the accused swan. Next, the over breadth of the Fumboy case and deciding that their over breadth is really equated with generic elements and when he's talking about generic, then that's a problem. However, even like Christian Louboutin, that case talks about what's more generic than the color red in the fashion industry. Nevertheless, this court found that when you couple that language with that trade dress red sole with a contrasting upper part of the shoe that there are trade dress rights. Look at Wallace International Silversmiths about the Baroque designs of a spoon, which we find this is very, very interesting. The court went on to discuss ad nauseum that these Baroque designs and elements were in the public domain long before Wallace International acquired them or put them in their trade dress. But at the very end of the case, they said, however, if you found a specific design that you can show secondary meaning, that might be protectable, and that's what we have here. Let me say what we say, I just very quickly reiterate what we say in our reply brief. Sunny Life incorporates not just any swan bill, but style elements exactly the same as ILPs. Not just any border of a swan bill, but one with styling exactly the same as ILPs. Not just any eye swan, which they could do this a number of ways, but one with the same shape, color scheme, and connected to the aforementioned border exactly in the same manner. And the list goes on. I refer you to footnote four on page 11 of our reply brief. With regard to the Supreme Court and the cocktail shaper, the penguin in the shape of a cocktail, that's all dicta. Doesn't say anything. Samara stands for the case, the proposition that there is no inherent distinctiveness in the design of a product that all has to be proved by secondary meaning. And that's really where we are. Even a generic product can be found to be protectable on the finding of secondary meaning, which is an issue of fact. And we have pleaded all of these in our second amended complaint. And the only thing that is missing, according to Judge Roman, who agreed with that essentially, was the aesthetic non-functionality issue. I thank you. We'll reserve the decision.